[No. B108517. Second Dist., Div. Two. Feb. 4, 1998.]

ROBERT F. KENNEDY MEDICAL CENTER, Plaintiff and Appellant, v. DEPARTMENT OF HEALTH SERVICES, Defendant and Respondent.

**COUNSEL**

Hooper, Lundy & Bookman and Patric Hooper for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Charlton G. Holland III, Assistant Attorney General, John H. Sanders and Karen L. Fried, Deputy Attorneys General, for Defendant and Respondent.

**OPINION**

**FUKUTO, J.**—In January 1984, defendant California Department of Health Services (the Department), the agency charged with the administration of the California Medical Assistance Program (Medi-Cal), informed plaintiff Robert F. Kennedy Medical Center (Kennedy), a certified provider of hospital services under the Medi-Cal program, that it owed Medi-Cal $511,258 because of the application of the all-inclusive rate per discharge limit (Cal. Code Regs., tit. 22, § 51536) to the calculation of the hospital's Medi-Cal reimbursement for the fiscal year ending December 31, 1981. Thereafter, by letter dated March 15, 1984, the Department agreed to defer recoupment of the funds until "the final disposition" of a federal lawsuit commenced against the Department by another hospital. The Department also agreed that no interest would "accrue or be payable by [Kennedy] to the Department on any sums ultimately determined to be due the Department but which were refunded to [Kennedy], not recouped by the Department, or otherwise paid by the Department to [Kennedy] by reason of [the parties' agreement]."

The federal litigation terminated on December 16, 1992. In a statement of account status letter dated February 27, 1996, the Department demanded that Kennedy repay in full within 60 days the principal sum of $511,258, as well as interest from January 1984 in the amount of $638,027. The letter advised that "[a]ny amount unpaid as of the 61st day [would] be subject to interest at prescribed rates and [could] be offset through a 100 percent withhold on [Kennedy's] current billings."

In a response dated March 12, 1996, Kennedy's counsel expressed the view that Kennedy was not liable for any portion of the moneys demanded.

He opined that the parties' agreement of March 15, 1984, "clearly prohibit[ed] the Department from imposing any interest on the alleged liability" and that while the principal amount of $511,258 "might have been due and payable to the Department at one time," any right to collect it had been barred by the applicable statute of limitations, Code of Civil Procedure section 338 (time for commencement of action upon liability created by statute three years), and/or the doctrine of laches.

Beginning on May 16, 1996, the Department started to collect the past liability by offsetting it against payments being made to Kennedy for current Medi-Cal services.

On June 13, 1996, Kennedy filed a petition for writ of mandate in the superior court (Code Civ. Proc., § 1085) seeking "an order . . . requiring [the Department] to comply with the terms and conditions of its Medi-Cal contract with [Kennedy] by making prompt payment for current services being rendered and prohibiting the Department from offsetting or otherwise collecting any alleged liability pertaining to services furnished by [Kennedy] during the 1981 fiscal year." Kennedy urged as it had in its letter of March 12, 1996, that the Department's right to seek recoupment of the principal sum was governed by the three-year statute of limitations set forth in Code of Civil Procedure section 338 and that since the Department had made no collection efforts within three years of the resolution of the federal lawsuit, it was barred from doing so. Kennedy additionally contended collection of the principal sum was barred by the doctrine of laches[1] and that the express terms of the parties' agreement of March 15, 1984, precluded the Department from imposing any interest on the alleged liability.

In opposition to Kennedy's petition, the Department argued that the applicable statute of limitations, Code of Civil Procedure section 337 (time for commencement of action on written contract four years), had not expired, that Kennedy could not establish unreasonable delay and resulting prejudice as required by the doctrine of laches, and that the Department had never waived its right to collect interest, but had merely postponed it until the federal litigation was completed.

The trial court found the doctrine of laches was "not implicated by the facts and circumstances of this case" and further concluded the Department's efforts to collect the overpayment for the 1981 fiscal year were subject to

---

[1]Kennedy alleged in its pleadings that "due to the passage of time, [it had] closed its financial records and statements for the 1981 fiscal year long ago and no sum [was] budgeted in any manner or [was] available from current operating capital for any alleged overpayment pertaining to services furnished during 1981."

Code of Civil Procedure section 337's four-year statute of limitations, which had not begun to run until December 1992 and had thus not terminated at the time the Department initiated its collection efforts on February 27, 1996. Accordingly, the court denied Kennedy's motion for a peremptory writ of mandate to the extent it sought to prohibit the Department from recouping the principal sum of $511,258. The court additionally ruled that the parties' letter agreement prevented the Department from assessing and/or collecting interest on the overpayment prior to the Department's demand for payment on February 27, 1996, but not from that date forward.

Kennedy appealed from that portion of the judgment adverse to it. We affirm.

## DISCUSSION

■ There are a number of alternatives available to the Department for recovering overpayments made to a Medi-Cal provider, including summary judgment (Welf. & Inst. Code, § 14172)[2] and offset (§ 14177) procedures. (See also §§ 14174, 14176.) In this instance, the Department opted for the offset procedure set out in section 14177, which specifies: "When it has been determined that a provider of health care services participating under the provisions of this chapter has received an overpayment which is due and payable, the director may recover such overpayment by offset against any amount currently due to a provider under the provisions of this chapter or Chapter 8 (commencing with Section 14200) of this part."

Unlike the summary judgment procedure described in section 14172, the offset procedure does not establish a statute of limitations. This apparently explains the parties' resort to statutes of limitations contained in the Code of Civil Procedure. If we were to find the civil statutes of limitations controlling, we would conclude, as did the trial court, that the Department's efforts to collect the Medi-Cal liability at issue here were subject to the four-year statute of limitations set forth in Code of Civil Procedure section 337 inasmuch as the date the Department was entitled to seek recoupment of the principal sum was defined by the parties' letter agreement. We are of the opinion, however, that neither Code of Civil Procedure section 337 nor Code of Civil Procedure section 338 is applicable to the facts of this case for the simple reason that "they apply to the commencement of civil actions and civil special proceedings [citations], which this was not." (*Little Company of Mary Hospital* v. *Belshé* (1997) 53 Cal.App.4th 325, 329 [61 Cal.Rptr.2d

---

[2]Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

626].) The Department's demand for repayment of the 1981 liability involved an administrative action and the "[s]tatutes of limitations found in the Code of Civil Procedure . . . do not apply to administrative actions. [Citation.]" (*Ibid.*)

While the defense of laches "may operate as a bar to a claim by a public administrative agency, such as the Department," Kennedy has not shown "the requirements of unreasonable delay and resulting prejudice [were] met [here]." (*Robert F. Kennedy Medical Center* v. *Belshé* (1996) 13 Cal.4th 748, 760, fn. 9 [55 Cal.Rptr.2d 107, 919 P.2d 721]; *Stevedoring Services* v. *Prudential Lines, Inc.* (1986) 181 Cal.App.3d 154, 160 [226 Cal.Rptr. 225].) Assuming this to be a case where "borrowing" a statute of limitations would be apposite (see *Fahmy* v. *Medical Bd. of California* (1995) 38 Cal.App.4th 810, 817, fn. 5 [45 Cal.Rptr.2d 486]), the Department's collection demand was made within four years of the termination of the federal litigation, which in our view would be the appropriate period to be "borrowed as a measure of the outer limit of reasonable delay in determining laches [citations]" (*Brown* v. *State Personnel Bd.* (1985) 166 Cal.App.3d 1151, 1160 [213 Cal.Rptr. 53]), since four years represents the limitations period for commencing an action on a written contract. Thus, unreasonable delay has not been demonstrated. Moreover, Kennedy failed to carry the 1981 overpayment as a contingent liability on its books even though, by its own reckoning, the Department had until December 1995 to recoup any overpayment. Indeed, according to the letter Kennedy's counsel wrote on March 12, 1996, Kennedy had "*long since* closed its books for the 1981 fiscal year." (Italics added.) Under the circumstances, any prejudice resulting from the state of Kennedy's financial records must be deemed to have been attributable to its own decisions or oversights, rather than to the Department's delay in demanding repayment of the 1981 liability. The trial court's determination that the Department is entitled to collect the principal sum of $511,258 must therefore be upheld.

■ We are likewise in accord with the trial court's ruling that the parties' letter agreement of March 15, 1984, does not preclude the Department from assessing and/or collecting interest on the principal sum of $511,258, commencing on February 27, 1996, the date the Department timely demanded repayment of that liability. The record contains no extrinsic evidence of the parties' intention at the time they entered into the 1984 agreement. Nonetheless, when the contents of the agreement are considered in their entirety (*Strong* v. *Theis* (1986) 187 Cal.App.3d 913, 918 [232 Cal.Rptr. 272]), it appears that Kennedy hoped the final disposition in the federal litigation would result in it not being responsible for the 1981

repayment and that, until that issue had been resolved, it wanted to ensure that the Department would refund any sums it had already recouped or withheld and reverse all adjustments it had made to Kennedy's Medi-Cal payments, that it would seek no recoupment of any additional funds or make further adjustments or modifications reducing Kennedy's Medi-Cal payments, and that no interest would be deemed to have accrued on any sums ultimately determined to be due the Department in light of the outcome in the federal action. However, the agreement does not purport to curtail the Department's actions after the federal action is finally disposed of or its right to assess and/or collect interest on the principal sum in the event of an outcome in the federal litigation unfavorable to Kennedy's position. That being so, it would be neither reasonable nor equitable to interpret the agreement in the fashion proposed by Kennedy, i.e., as waiving its interest obligation for all time. (*Strong* v. *Theis, supra*, 187 Cal.App.3d at pp. 919-920.) Such a construction would mean that once the federal action had concluded and the Department had renewed its demand for the principal sum of $511,258, Kennedy could simply refuse to repay the liability without exposing itself to the accrual of interest to which the Department is statutorily entitled.

## DISPOSITION

The judgment is affirmed.

Boren, P. J., and Zebrowski, concurred.