[No. C058849. Third Dist. Feb. 6, 2009.]

PETE G. THOMAS, Plaintiff and Appellant, v.
SANDRA SHEWRY, as Director, etc., Defendant and Respondent.

COUNSEL

Hooper, Lundy & Bookman and Patric Hooper for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Douglas M. Press, Assistant Attorney General, Susan E. Slager and Mateo Muñoz, Deputy Attorneys General, for Defendant and Respondent.

## OPINION

**DAVIS, Acting P. J.**—Plaintiff Pete G. Thomas, a podiatrist, filed this action for a writ of traditional mandate ordering defendant (who is the director of the State Department of Health Care Services (DHCS)) to reconsider his application for reenrollment as a provider of Medi-Cal services without regard to his outstanding liability for an overpayment that a DHCS audit identified in July 1999 and that the DHCS caused to be entered summarily as a judgment in July 2002; in the alternative, he sought an order for the DHCS to provide him an opportunity to contest the audit determination on the merits. The trial court denied the petition. Plaintiff has filed a timely notice of appeal.

In his own words, plaintiff "is limiting his appeal only to the issue of whether . . . [the] DHCS'[s] failure to file a certificate in Orange County [his principal place of business] [to request a summary entry of judgment on the 1999 overpayment determination (Welf. & Inst. Code, § 14172)[1]] did not affect the enforceability of the July 1, 2002, [Sacramento County] Judgment [entered pursuant to section 14172]." We shall affirm.

### FACTS

The DHCS conducted onsite audits of plaintiff's records in November 1998 and May 1999 and an exit interview in May 1999. It then mailed a notice to plaintiff's attorney on July 28, 1999 (which counsel received the next day), of its determination that plaintiff owed reimbursement of $790,000 (all dollar amounts are rounded to the nearest $1,000) for overpayments to him under two different Medi-Cal provider numbers. This amount would be payable within 60 days from the July 28, 1999, notice unless plaintiff filed a request for a hearing within 30 days from receipt of the notice. However, plaintiff's attorney did not file a request for a hearing until September 1999.

---

[1] Hereafter, undesignated statutory references are to the Welfare and Institutions Code.

In response to a second notice in April 2002 of the sum owing (plus interest) under one of the provider numbers, plaintiff's attorney initially asserted that there was a pending hearing on that sum, then asserted that plaintiff had filed a request for a hearing in September 1999 to which the DHCS had not responded. The DHCS subsequently filed a certificate on July 1, 2002, with the clerk of the Sacramento County Superior Court, attesting to a final 1999 administrative determination of an overpayment to plaintiff in the amount of $790,000 plus $112,000 in interest, from which plaintiff had not taken any appeal and which was within three years preceding the filing of the certificate. (§ 14172, subd. (a.).)[2] A deputy clerk entered judgment on the same date. (§ 14172, subd. (a.).)

The petition alleged that plaintiff did not receive a notice of entry of this Sacramento County judgment and that the DHCS did not file a certificate of health care provider overpayment in Orange County (his principal place of business) as required under section 14172. Although the DHCS contested these allegations in its answer to the petition, the appellate appendix does not include any proof of service of the Sacramento County judgment or any certificate or judgment from Orange County, and the DHCS does not dispute these representations in its brief.

In May 2003, plaintiff's attorney again attempted to assert in a letter to the administrative appeals unit of the DHCS that the principal amount of $790,000 from 1999 was no longer due because the DHCS had failed to act on his September 1999 request for a hearing. The chief hearing officer of the DHCS responded that the DHCS had never received the request, but in any event it was untimely. However, he invited plaintiff to request a hearing to demonstrate good cause for an untimely request for a hearing on the merits of the 1999 determination.[3]

---

[2] The pertinent part of the statute provides, "the director may, not later than three years after the payment became due and owing, file in the office of the Clerk of the Superior Court of Sacramento County, and with the clerk of the superior court of the county in which the provider has its principal place of business, a certificate . . . . [¶] . . . [¶] The clerk immediately upon the filing of the certificate shall enter a judgment for the State . . . against the provider . . . . The judgment may be filed . . . in a looseleaf book entitled 'Health Care Overpayment Recovery Judgments.' " (§ 14172, subd. (a.).)

[3] By virtue of plaintiff's limitation of the scope of his appeal and his own appellate admission that he did not file a timely appeal of the overpayment determination, we may ignore the allegation in his petition that the DHCS's assertion in May 2003 of the lack of a timely appeal was contrary to the rulings of DHCS hearing officers in similar cases (based on one decision of a hearing officer in an inapposite case who found that the facts indicated that the provider did not receive notice of the overpayment determination).

In September 2003, plaintiff entered into a settlement agreement with the DHCS in connection with an accusation that had alleged improper billing practices. Plaintiff's status as a Medi-Cal provider had been suspended temporarily since 2000; he now agreed to the deactivation of his provider numbers for a minimum period of 34 months. At the end of this deactivation period, plaintiff could file an application for reenrollment as a Medi-Cal provider (in connection with which the DHCS could not consider any of the allegations of the accusation). The DHCS otherwise could base its decision on the application on "the circumstances existing at the time the application is submitted," without any "promises or representations regarding the . . . application being accepted" being made or implied under the settlement agreement. In accord with DHCS regulations, the settlement agreement included a provision that "All outstanding forms of indebtedness owed by the [plaintiff] to the [DHCS], including all audit overpayment liability, must be paid in full before the [DHCS] will accept and entertain a new Provider Application form from the [plaintiff]." (See Cal. Code Regs., tit. 22, § 51000.50, subd. (a)(6).) Plaintiff alleged that he entered into the settlement agreement believing that the 1999 determination was not valid any longer.[4]

Plaintiff filed his application for reenrollment in February 2007. The DHCS notified him in March 2007 that the application was incomplete; among the deficiencies were his failure to include documentation of "[debts] you owed to state health care programs that have not been paid in full and what arrangements have been made to fulfill the obligations." The notice specified that he must correct the deficiencies within 35 days. The DHCS does not have any record of any response to the notice, and accordingly notified him that by operation of law his application was denied as incomplete, and he had 60 days within which to appeal this determination. (See § 14043.65; Cal. Code Regs., tit. 22, § 51000.50, former subd. (d)(2); id., subds. (f), (i).) The DHCS does not have any record of an appeal of the denial. Plaintiff filed the present petition in October 2007.

In its opposition to the petition, the chief of the audit division attested to the destruction of all documentation that supported the 1999 audit pursuant to the division's standard policies for document retention because the time to challenge the audit had long passed. Another DHCS employee attested to plaintiff's outstanding indebtedness to the DHCS as of December 2007, which was $1,461,000 (including an earlier audit from 1998) in principal and

---

[4] The DHCS denied this allegation in its answer. Plaintiff did not produce any evidence to support this allegation.

interest. Plaintiff had not entered into any voluntary repayment agreements as of that date.

In its ruling on the petition, the trial court noted the failure of plaintiff to file a timely administrative appeal either of the denial of his application for reenrollment, or the underlying 1999 obligation.[5] It also concluded that the 2002 Sacramento County judgment on the 1999 determination of overpayment was not invalid for the failure either to serve plaintiff with notice of its entry, or to obtain a second judgment in Orange County. Moreover, plaintiff had an independent contractual obligation pursuant to the 2003 settlement agreement to reimburse the overpayment. The court therefore denied the petition.

## DISCUSSION

Plaintiff does not offer any argument on issues included in the trial court's ruling and the DHCS briefing other than the claimed invalidity of the 2002 Sacramento County judgment. Regardless of the fact that we review issues of law de novo, it remains his duty as an appellant to demonstrate error in the trial court's reasoning. (*Independent Roofing Contractors v. California Apprenticeship Council* (2003) 114 Cal.App.4th 1330, 1336 [9 Cal.Rptr.3d 477].) We shall nonetheless reach the other issues on the merits as well.

## I

As noted in our summary of the trial court's ruling (and as the DHCS asserts on appeal), there is an administrative remedy for the denial of plaintiff's 2007 application that he did not exhaust before filing his petition. In the absence of any exception, "the exhaustion of an administrative remedy is a *jurisdictional prerequisite* to resort to the courts." (*County of Contra Costa v. State of California* (1986) 177 Cal.App.3d 62, 73 [222 Cal.Rptr. 750], italics added.)

Plaintiff has not argued the existence of any exception to this rule that might apply. To note two of the more common excuses that parties invoke, there is neither evidence that the DHCS had predetermined the resolution of his administrative appeal, nor that the administrative remedy did not comply

---

[5] The court also concluded that his failure to respond to the 2003 invitation to request a hearing on good cause for his untimely appeal of the 1999 determination resulted in prejudice to the DHCS, and laches therefore barred his challenge to it.

with the standards of due process. (*Imagistics Internat., Inc. v. Department of General Services* (2007) 150 Cal.App.4th 581, 590–591 [59 Cal.Rptr.3d 18].) His petition is therefore barred procedurally. We will proceed to the merits in any event to put the issue to rest in the event of a future application for reenrollment (neither party having directed us to any provision that would bar plaintiff from doing so) or subsequent litigation.[6]

## II

In a prior version of the bill enacting section 14172, the statute would have offered the DHCS director the alternatives of filing a certificate with the Sacramento County Clerk *or* the county clerk in the county of the Medi-Cal provider's principal place of business. (Assem. Amend. to Assem. Bill No. 441 (1977–1978 Reg. Sess.) May 4, 1977, p. 10.)[7] As amended shortly afterward (and as enacted), it requires the filing of a certificate with the court clerks of *both* counties. (Assem. Amend. to Assem. Bill No. 441 (1977–1978 Reg. Sess.) May 25, 1977, p. 7; Stats. 1977, ch. 1046, § 6, pp. 3172, 3173–3174.)

■ Plaintiff contends that this requirement for filing a certificate in both counties is not only an obligatory rather than a permissive procedure, but is a mandatory procedure rather than a directory one, and consequently the failure to comply with it invalidates the Sacramento County judgment.[8] (*People v.*

---

[6] For the same reason, we will overlook the DHCS's meritorious argument that the writ should not issue because the validity of the 2002 judgment is only an abstract claim in light of *other* deficiencies in plaintiff's application that he did not remedy after the March 2007 notification from DHCS, or because there is also a 1998 overpayment determination, or because he has an independent obligation under the 2003 settlement agreement to repay any outstanding debts. (*Concerned Citizens of Palm Desert, Inc. v. Board of Supervisors* (1974) 38 Cal.App.3d 257, 270 [113 Cal.Rptr. 328].)

On the other hand, defendant's third procedural argument lacks merit. The DHCS argues that it does not have a ministerial duty to approve plaintiff's application; rather, it is free to exercise its discretion on his application under the law and the terms of the 2003 settlement agreement on *all* existing facts, not just the 1999 overpayment determination, which means the writ will not lie. (*Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, 752 [85 Cal.Rptr.2d 512].) The exercise of discretion, however, cannot include the consideration of an impermissible factor such as failing to repay a purportedly uncollectible overpayment debt, because such a decision would transgress the confines of the substantive law that the DHCS is charged with enforcing, and a writ could therefore issue to correct what would otherwise be an abuse of discretion. (*Barnes v. Wong* (1995) 33 Cal.App.4th 390, 395 [39 Cal.Rptr.2d 417]; see *City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297–1298 [255 Cal.Rptr. 704].) As a result, if his substantive argument were valid, it would be a proper basis for mandate.

[7] We granted plaintiff's motion for judicial notice of this legislative history, which is one of the more probative ways of discerning intent. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 31 [34 Cal.Rptr.3d 520].)

[8] As more than three years have now passed, the DHCS could not file a new certificate to obtain a judgment on the overpayment determination from 1999.

*McGee* (1977) 19 Cal.3d 948, 958–959 [140 Cal.Rptr. 657, 568 P.2d 382].) In resolving this question, the guiding principle is whether the compliance with the procedural provision "is necessary to promote the statutory design" (*id.* at p. 958; accord, *Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 673 [26 Cal.Rptr.2d 703]), which indicates the procedure is mandatory. If, on the other hand, the prescribed procedure is not entwined with the essence of the statutory object or purpose, and a departure does not cause any injury to affected parties, it is only directory and does not result in the invalidation of the governmental action to which the procedure relates. (*Cal-Air, supra,* 21 Cal.App.4th at p. 673.) In terms of the statutory object or purpose, a finding that the procedure is mandatory generally follows where the protection of individuals is involved; however, where the object or purpose is merely to secure the orderly conduct of business, a finding that the procedure is directory is the usual result. (*Judith P. v. Superior Court* (2002) 102 Cal.App.4th 535, 552 [126 Cal.Rptr.2d 14].)

Among the purposes of Assembly Bill No. 441 (1977–1978 Reg. Sess.) was establishing an administrative appeal process for audits, and empowering the DHCS to recover overpayments in three ways. (Legis. Counsel's Dig., Assem. Bill No. 442 (1977–1978 Reg. Sess.) 3 Stats. 1977, Summary Dig., p. 280, 2d par. (hereafter 1977 Summary Digest).) First, the DHCS could obtain summary entry of judgment "upon the filing of a specified certificate" 90 days after issuing its final administrative decision; "upon the recording of *the* judgment with the county recorder" (italics added), it constitutes a lien against the provider's real property.[9] (1977 Summary Dig., p. 280; see §§ 14172, 14173 [abstract of *a* judgment under § 14172 may be recorded in *any* county and constitutes a lien on provider's real property].) Second, the DHCS could offset an overpayment obligation against any amounts that are currently due to the provider. Finally, the DHCS could seek to reach a voluntary repayment agreement with the provider. (1977 Summary Dig., *supra,* p. 280, 2d par.; see §§ 14177, 14176, respectively.)

These remedies are expressly cumulative: seeking summary entry of judgment under section 14172 is not an election of that remedy to the exclusion of the others. (§ 14174.) While the DHCS is subject to a three-year statute of limitations in which to seek a judgment, there is no limitations

---

[9] The bill barred the DHCS from seeking the summary entry of judgment if the provider sought judicial review of the decision within 90 days; if the provider sought timely judicial review after 90 days, then the judgment is voided and the DHCS must release any lien. (See § 14172, subd. (b).)

period on seeking an offset, though laches may apply. (*Robert F. Kennedy Medical Center v. Department of Health Services* (1998) 61 Cal.App.4th 1357, 1361–1362 [72 Cal.Rptr.2d 180].)[10] (Presumably a voluntary repayment agreement does not implicate any limitations period.) As a result, plaintiff's claim at oral argument that we should construe the requirements of section 14172 strictly because it is an exception to the three-year statute of limitations does not have any basis in light of the other remedies available to the DHCS.

■ The statutory design of Assembly Bill No. 441 (1977–1978 Reg. Sess.) was to enhance the ability of the DHCS to collect overpayments from providers *after* they were accorded due process in an administrative appeal from which they could seek judicial review. Nothing in the provisions for the collection procedure indicates an intention to protect the provider; indeed, there is no requirement of notice of entry of *either* of the judgments. The judgments, rather, simply serve as liens on the real property of the provider. As a result, the failure of the DHCS to file a certificate for the summary entry of a second judgment in Orange County could not result in any injury to plaintiff. Moreover, both the 1977 Summary Digest and section 14173 refer only in the singular to the filing of *a* judgment with any county recorder (not *both* judgments) in order to constitute a lien on a provider's real property in that county, which is also at odds with a conclusion that the Legislature intended the dual filing to be mandatory. Third, the entry of judgment in Sacramento County does not have any effect on providers outside its boundaries; we can thus discern an intent that the requirement of dual filing both in Sacramento County and the county of the provider's principal place of business (where he is most likely to have real property) serves the purpose of having a centralized record of all Medi-Cal overpayment liens in the looseleaf book of judgments that the clerk of the Sacramento County Superior Court is authorized to keep. As this is simply a goal of securing the orderly conduct of business, it also leads to the conclusion that the provision is merely directory.

In short, plaintiff failed to establish the invalidity of the 2002 judgment. He was therefore not entitled to writ relief on the merits of his claim.

---

[10] Consequently, even if we were to find the 2002 Sacramento County judgment invalid for purposes of an unpaid outstanding debt in connection with plaintiff's 2007 application, nothing would necessarily prevent DHCS from seeking to offset the 1999 determination against future Medi-Cal payments to him (absent proof of the elements of laches, which was not part of the petition), and therefore the underlying 1999 determination is still an unpaid obligation for which plaintiff must account as part of any application for reenrollment. Once again, this would render the writ nothing more than the enforcement of an abstract right, warranting its denial. (See fn. 6, *ante*.)

## DISPOSITION

The judgment is affirmed. Respondent is awarded its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)

Hull, J., and Cantil-Sakauye, J., concurred.