Filed 5/23/18; Certified for Publication 6/14/18 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| VINCENT KROLIKOWSKI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO CITY EMPLOYEES'<br>RETIREMENT SYSTEM,<br><br>    Defendant and Respondent. | D071119<br><br><br>(Super. Ct. No. 37-2015-00006255-CU-OE-CTL) |
| CONNIE VAN PUTTEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO CITY EMPLOYEES'<br>RETIREMENT SYSTEM,<br><br>    Defendant and Respondent. | (Super. Ct. No. 37-2015-00021007-CU-OE-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Joel M. Pressman, Judge. Affirmed.

Law Office of Michael A. Conger and Michael Conger for Plaintiffs and Appellants.

Noonan Lance Boyer & Banach, David J. Noonan and Genevieve M. Ruch; The Law Office of Steven W. Sanchez and Steven W. Sanchez for Defendant and Respondent.

Appellants Vincent Krolikowski and Connie Van Putten (collectively appellants) are former employees of the City of San Diego (the City) and members of the San Diego City Employees' Retirement System (SDCERS) who receive monthly pension payments from SDCERS, the administrator of the City's pension plan. Krolikowski and Van Putten separately filed lawsuits against SDCERS after SDCERS discovered an error in calculating their monthly pension benefits and took action to recoup the past overpayments. In their now-consolidated lawsuits, Krolikowski and Van Putten assert causes of action for conversion, breach of fiduciary duty, writ of mandate (Code Civ. Proc., § 1085) and declaratory relief, all of which challenge SDCERS's ability to implement a recoupment procedure to collect the overpayments from Krolikowski and Van Putten. After a bench trial, the trial court entered judgment in favor of SDCERS.

Krolikowski and Van Putten contend that the trial court erred in (1) sustaining SDCERS's demurrer to the conversion and breach of fiduciary duty causes of action; and (2) finding in favor of SDCERS after conducting a bench trial on the remaining causes of action for writ of mandate and declaratory relief. As we will explain, we conclude that appellants' arguments are without merit, and we accordingly affirm the judgment.

2

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Van Putten worked for the City's police department from 1965 to 1988, having reached the rank of police lieutenant. Van Putten then worked for the Union City police department, and deferred her retirement from the City until she retired from the Union City police department in December 2000, at which time she began receiving monthly pension payments from SDCERS.[1]

---

[1] Our Supreme Court has summarized the role of SDCERS in administering the City's pension system: "San Diego is a charter city. It maintains a pension plan for its employees, the San Diego City Employees' Retirement System (SDCERS). (San Diego City Charter, art. IX, § 141; San Diego Mun. Code, § 24.0101.) SDCERS is a defined benefit plan in which benefits are based upon salary, length of service, and age. (San Diego Mun. Code, §§ 24.0402-24.0405.) The plan is funded by contributions from both the City and its employees. (San Diego City Charter, art. IX, § 143; San Diego Mun. Code, § 24.0402.) . . . [¶] The pension fund is overseen by a 13-member board of administration (SDCERS Board or Board). (San Diego City Charter, art. IX, § 144.) Although established by the City, the Board is a separate entity. (*Ibid*.; *Bianchi v. City of San Diego* (1989) 214 Cal.App.3d 563, 571.) The SDCERS Board is a fiduciary charged with administering the City's pension fund in a fashion that preserves its long-term solvency; it must ensure that through actuarially sound contribution rates and prudent investment, principal is conserved, income is generated, and the fund is able to meet its ongoing disbursement obligations. (Cal. Const., art. XVI, § 17; San Diego City Charter, art. IX, § 144.) Consistent with that central mission, the SDCERS Board has a range of ancillary obligations, including but not limited to providing for actuarial services, determining member eligibility for and ensuring receipt of benefits, and minimizing employer contributions. (Cal. Const., art. XVI, § 17, subds. (b), (e); San Diego City Charter, art. IX, §§ 142, 144; San Diego Mun. Code, § 24.0901.) To carry out these duties, the Board is granted the power to make such rules and regulations as it deems necessary. (San Diego City Charter, art. IX, § 144; San Diego Mun. Code, §§ 24.0401, 24.0901; see generally *Bianchi,* at p. 571; *Grimm v. City of San Diego* (1979) 94 Cal.App.3d 33, 39-40.)" (*Lexin v. Superior Court* (2010) 47 Cal.4th 1050, 1063-1064 (*Lexin*).)

Krolikowski worked for the City's police department from 1972 to 1990, having reached the rank of detective. Krolikowski then worked for the County of San Diego as an investigator for the District Attorney's office, and deferred his retirement from the City until he retired from the County of San Diego in 2006, at which time he began receiving monthly pension payments from SDCERS.

As Krolikowski and Van Putten testified, before they retired they both consulted with SDCERS about the amount of the pension benefit they would receive from their employment with the City, and they used that information in deciding when to retire.

In 2013, SDCERS performed an audit of the pension benefits that it was paying to Krolikowski and Van Putten, and it discovered that it made an error in calculating the monthly payments that Krolikowski and Van Putten had been receiving since they retired. With respect to both Van Putten and Krolikowski, SDCERS had used the wrong retirement factor, in that it did not use the retirement factor that corresponded with the date that Van Putten and Krolikowski left their employment with the City. As to Van Putten, SDCERS also discovered that it had used the wrong annuity factor.

SDCERS determined that, without accrued interest, the overpayments were $18,739.88 for Krolikowski and $17,049.48 for Van Putten.[2] If SDCERS had correctly calculated the pension benefits when Krolikowski and Van Putten retired, Van Putten

---

[2] We note that when SDCERS first contacted Krolikowski and Van Putten about the errors, SDCERS presented them with higher figures for the amount of the overpayments. Those figures, however, were mistakenly based on erroneous assumptions about Krolikowski and Van Putten's participation in the social security program. SDCERS subsequently corrected those errors, which resulted in the overpayment figures we have set forth herein.

would have received approximately $295 per month less at the time she started to collect her pension in 2001, and Krolikowski would have received $191.74 less per month at the time he started to collect his pension in 2006.

In 2013, after discovering the errors, SDCERS contacted Van Putten and Krolikowski to explain that they would be required to pay back the overpayments.[3] SDCERS also explained that, going forward, Van Putten's and Krolikowski's monthly pension benefit would be reduced to reflect the correct calculation of benefits. SDCERS gave Van Putten and Krolikowski the option of making the repayment of the past overpayments by either (1) having a specific amount deducted from their monthly pension payments over time, while incurring interest on the unpaid balance; or (2) making a lump sum payment to SDCERS, which would stop the accrual of interest on the amount owed. SDCERS also explained to Van Putten and Krolikowski that they had the right to file an administrative appeal to dispute the fact that an overpayment occurred or the amount of the overpayment.

Krolikowski and Van Putten both pursued unsuccessful administrative appeals of SDCERS's decision to recoup the overpayments from them. An administrative appeal of SDCERS's decision to recoup overpayments consists of several steps: (1) the filing of a written appeal with SDCERS's member services director; (2) a review by SDCERS's Chief Executive Officer (CEO); (3) an appearance before SDCERS's Business and

---

[3]    When interest on the overpayments was included, SDCERS sought recoupment of $19,109.06 from Van Putten, as of July 25, 2014. As to Krolikowski, when interest was included SDCERS sought recoupment of $24,785.20 as of January 2014.

Governance Committee at a regularly scheduled meeting; and (4) a final decision by SDCERS's Board based on a recommendation of the Business and Governance Committee.[4] As the final step of the appeal process, SDCERS's Board of Administration denied Krolikowski's appeal on November 14, 2014, and denied Van Putten's appeal on May 8, 2015.

After the appeal process was over, to stop the accrual of further interest Van Putten made a lump sum payment to SDCERS in May 2015, under protest, in the amount of $21,512.54. In March 2015, SDCERS began making monthly deductions from Krolikowski's monthly pension payment in the amount of $269.25 to recoup the overpayment.

On February 24, 2015, Krolikowski filed a complaint against SDCERS challenging its recoupment of the overpayments of his pension benefits, and on June 22, 2015, he filed a first amended complaint. The first amended complaint contained causes of action for (1) declaratory relief; (2) writ of mandate (Code Civ. Proc., § 1085); (3) breach of fiduciary duty, based on both common law and "constitutional" grounds (Cal. Const. art. XVI, § 17); and (4) conversion. The writ of mandate and declaratory relief causes of action both presented the issue of whether "SDCERS is subject to, at

---

4       SDCERS's appeal policy states that the Business and Governance Committee "may recommend referral to a hearing before an Adjudicator if the Committee deems that appropriate." No such referral to an adjudicator for an evidentiary hearing occurred here, and neither of the parties requested that the Business and Governance Committee make such a referral. Indeed, as the issues presented are primarily legal, revolving around SDCERS's authority to recoup past overpayments, it is unclear what factual disputes could have been resolved by an adjudicator.

most, a three-year statute of limitations and therefore may not collect any arrears overpayments;" and whether "SDCERS is subject to California law exempting pensions from levy or attachment (e.g., Code Civ. Proc., §§ 695.040, 704.11, sub[d.] (b)) and therefore may not simply take money from Krolikowski's pension." The breach of fiduciary duty cause of action was based on SDCERS's alleged wrongful "refusal to follow California law regarding the statute of limitations and exempting pensions from levy or attachment." The conversion cause of action was based on the allegation that SDCERS "intentionally and substantially interfered with Krolikowski's property by taking possession of funds that should have been paid to Krolikowski, by preventing Krolikowski from having access to these funds, and by refusing to return these funds to Krolikowski after he demanded the return of these funds."

On June 23, 2015, Van Putten filed a complaint against SDCERS that contained the same causes of action as Krolikowski's first amended complaint and asserted the same legal theories, using largely identical language.[5] Both cases were assigned to the same trial court department.

SDCERS filed a demurrer to each of the causes of action in Krolikowski's first amended complaint. The trial court overruled the demurrer to the declaratory relief and writ of mandate causes of action. However, it sustained the demurrer to the breach of

---

[5] Krolikowski's and Van Putten's complaints also alleged, as a basis for their causes of action, that the amount of SDCERS's original pension benefit calculations at the time of their retirement was correct. Appellants did not pursue that theory at trial, and we do not address it here. We note also that appellants expressly do not challenge the right of SDCERS to pay them the corrected amount of pension payments *going forward*. Their appeal challenges only the recoupment of the *past* overpayments.

7

fiduciary duty and conversion causes of action. In explaining its ruling sustaining the demurrer to those causes of action, the trial court stated that "SDCERS had an obligation to comply with the law and correct errors in benefit payments. . . . The exercise of attempting to correct an error in benefit payments cannot subject defendant to tort liability." SDCERS also had demurred to the breach of fiduciary duty and conversion causes of action on the ground that SDCERS was protected by immunity for tort liability for its employees' discretionary acts. However, the trial court did not rule on that ground for the demurrer.

Because of the similarity of the Krolikowski and Van Putten complaints, the parties stipulated that the trial court's ruling on the demurrer to Krolikowski's complaint "shall be applicable to" Van Putten's case, and the parties reserved all rights to appeal in Van Putten's case as if the trial court had made the demurrer ruling in that case as well.

The trial court later granted a motion to consolidate the Krolikowski and Van Putten cases, and it then considered cross-motions for summary judgment that were filed in the consolidated actions.

At issue in the summary judgment motions were the remaining causes of action for writ of mandate and declaratory relief, both of which raised the issue of (1) whether SDCERS was subject, at most, to a three-year statute of limitations to collect any overpayments; and (2) whether SDCERS's actions to recoup the overpayments were prohibited because they constituted an illegal levy or attachment. Krolikowski and Van Putten further argued in their summary judgment motions that SDCERS was barred by the doctrines of equitable estoppel and laches from recovering the overpayments.

8

SDCERS pointed out in opposition that the doctrines of equitable estoppel and laches were not pled in the operative complaints. However, in ruling on the summary judgment motions, the trial court concluded that Krolikowski and Van Putten would be permitted to pursue those issues as part of its declaratory relief and writ of mandate causes of action, and that "the pleadings can be amended to allege these doctrines."[6]

The trial court denied the cross-motions for summary judgment. In its summary judgment ruling, the trial court concluded that (1) the collection of an overpayment of pension benefits was not a levy or attachment; and (2) SDCERS's "administrative correction process . . . is not subject to the statute of limitations for civil court actions." However, the court concluded that there were triable issue of material fact as to whether the doctrines of equitable estoppel or laches applied to bar SDCERS from collecting the overpayments.

The trial court held a bench trial on the remaining issues of whether the doctrines of equitable estoppel and laches applied in this case to support Krolikowski and Van Putten's contention that SDCERS may not demand recoupment of the pension benefit overpayments made to them. At the conclusion of trial, the trial court requested that the parties submit proposed statements of decision. The trial court adopted the proposed statement of decision submitted by SDCERS and issued it as the trial court's decision in

---

6 Krolikowski and Van Putten subsequently filed amended complaints alleging in the declaratory relief and writ of mandate causes of action that the doctrines of equitable estoppel and laches applied to prevent SDCERS from demanding repayment from them.

favor of SDCERS on the remaining causes of action for writ of mandate and declaratory relief.

In the statement of decision, the trial court set forth its findings that appellants had not met their burden to establish that the doctrine of laches applied because they did not establish unreasonable delay and did not establish prejudice from any delay. Similarly, the trial court explained that the doctrine of equitable estoppel did not apply because Krolikowski and Van Putten did not establish that SDCERS was apprised of its mistake before 2013, and did not establish that they sustained an injury in reliance on SDCERS's conduct. The statement of decision also reasserted the rulings made in the context of the summary judgment motion that (1) SDCERS was not subject to the statute of limitations for civil court actions in implementing its administrative recoupment process; and (2) SDCERS's act of seeking recoupment for the overpayments was not subject to the exemption against levy or attachment on a pension. The trial court thereafter entered judgment in favor of SDCERS, and Krolikowski and Van Putten filed a notice of appeal.

II.

DISCUSSION

A. *The Trial Court Did Not Err in Sustaining the Demurrer to the Breach of Fiduciary Duty and Conversion Causes of Action*

We first consider Krolikowski and Van Putten's contention that the trial court erred in sustaining the demurrer to the two tort-based causes of action they alleged, namely breach of fiduciary duty and conversion.

1. *Standard of Review*

10

" 'On appeal from an order of dismissal after an order sustaining a demurrer, our standard of review is de novo, i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650.)  In reviewing the complaint, "we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814.)  We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling.  (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

     2.     *The Tort-Based Causes of Action Are Barred by Government Claims Act Immunity*

As one ground for its demurrer to the causes of action for breach of fiduciary duty and conversion, SDCERS argued that the Government Claims Act (Gov. Code, § 815 et seq.) provided it with immunity for the acts underlying those causes of action.  The trial court sustained the demurrer on different grounds and did not reach the immunity issue.  However, SDCERS contends on appeal that we should affirm the trial court's order sustaining the demurrer to those causes of action by concluding that it is immune from tort liability under the Government Claims Act.  As we will explain, we conclude that SDCERS's immunity argument has merit and serves as a sound basis for affirming the demurrer to the causes of action for breach of fiduciary duty and conversion.

     a.     *Legal Basis for Immunity Argument*

11

Within the Government Claims Act, the statutory immunity applicable to SDCERS in this context is set forth in Government Code section 815.2, subdivision (b), which creates immunity for a public entity when its employees are immune from liability for the act or omission at issue. As set forth in that provision, "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (*Ibid.*; see also *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 980 (*Caldwell*) [explaining that under Gov. Code, § 815.2, subd. (b) "public entities are immune where their employees are immune, except as otherwise provided by statute"]; *Masters v. San Bernardino County Employees Retirement Assn.* (1995) 32 Cal.App.4th 30, 49 [to the extent that the public pension system board had discretionary immunity, the public entity itself was also immune].) As SDCERS points out, the breach of fiduciary duty and conversion causes of action are based on acts by the SDCERS Board members, who are employed by SDCERS, and thus to the extent the Board members are protected by immunity, SDCERS is as well.

Here, the immunity provision that applies to the individual SDCERS Board members is set forth in Government Code section 820.2. Under that provision, "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (*Ibid.*)

Our Supreme Court's case law has provided guidance on the type of decisions that fall under the discretionary act immunity set forth in Government Code section 820.2.

12

Immunity under this provision "is reserved for those '*basic policy decisions* [which have] . . . been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.' . . . Such 'areas of quasi-legislative policy-making . . . are sufficiently sensitive' . . . to call for judicial abstention from interference that 'might even in the first instance affect the coordinate body's decision-making process.' " (*Caldwell, supra,* 10 Cal.4th at p. 981, citations omitted.) In contrast, "there is no basis for immunizing lower-level, or 'ministerial,' decisions that merely implement a basic policy already formulated." (*Ibid*.)

The application of discretionary act immunity "requires a showing that 'the specific conduct giving rise to the suit' involved an *actual* exercise of discretion, i.e., a '[conscious] balancing [of] risks and advantages . . . .' " (*Caldwell, supra,* 10 Cal.4th at p. 983, citation omitted.) However, there is no requirement that the public employee's exercise of discretion be based on "a *strictly careful, thorough, formal, or correct* evaluation" because "[s]uch a standard would swallow an immunity designed to protect against claims of carelessness, malice, bad judgment, or abuse of discretion in the formulation of policy." (*Id*. at pp. 983-984.)

> b.  *The Breach of Fiduciary Duty and Conversion Causes of Action Are Based on Discretionary Acts by the SDCERS Board*

Based on the legal standards set forth above, SDCERS has immunity under the Government Claims Act if the breach of fiduciary duty and conversion causes of action are based on an exercise of discretion by the SDCERS Board members.

Here, as pled in the operative complaints, the breach of fiduciary duty cause of action is based on the SDCERS Board's alleged "refusal to follow California law regarding the statute of limitations and exempting pensions from levy or attachment." The conversion cause of action is based on SDCERS's "refusing to return" the recouped overpayments after appellants "demanded the return of these funds." Both of those acts are based on the SDCERS Board's careful evaluation of the issues at the Board meetings at which it considered Krolikowski's and Van Putten's appeals, during which it explicitly decided that it would reject the statute of limitations and exemption arguments, and that it would instead take steps to recoup the overpayments from Krolikowski and Van Putten. Indeed, as shown by the transcript of the SDCERS Board meetings regarding Krolikowski's and Van Putten's administrative appeals, the Board was grappling with a policy-level decision in concluding that it would go forward and recoup the overpayments. It considered, among other things, whether the law required such an action, whether it would be fair to proceed in that manner, whether other options were available, and whether it should proceed with the recoupment in order to set up a litigation scenario in which the courts could give the final word on whether SDCERS was permitted to seek recoupment for overpayments. The decision was clearly discretionary and was not merely the carrying out of a ministerial duty. Therefore, SDCERS is immune to tort liability for the acts underlying the causes of action for breach of fiduciary duty and conversion under the legal standards governing the immunity created by the Government Claims Act.

14

c.	*The Tort-based Causes of Action Are Subject to Immunity Even Though They Are Based on Provisions in the State Constitution*

Krolikowski and Van Putten do not attempt to contest that, as we have discussed above, the acts of the SDCERS Board giving rise to the breach of fiduciary duty and conversion causes of action are the type of discretionary decisions that normally would give rise to immunity from tort-based causes of action under the Government Claims Act. Instead, the sole argument that appellants make to us on the immunity issue focuses on the fact that they have pled a cause of action for breach of fiduciary duty that is based on the *constitutional* fiduciary duties of the SDCERS Board, rather than on *common law* fiduciary duties. Specifically, appellants argue that the immunity in Government Code section 815.2, subdivision (b) does not bar the breach of fiduciary duty cause of action because it arises under provisions of the California Constitution that establish the fiduciary duties of public pension boards. They contend that Government Claims Act immunity applies only when a tort claim is based on statutory or common law authority, but not when it is based on a constitutional provision.[7]

As the basis for their claim that their breach of fiduciary duty causes of action arise under our state's Constitution, appellants rely on article XVI, section 17 of the California Constitution, which describes the fiduciary responsibilities of the members of a public pension board. In part, that section provides:

---

[7]	As a matter of logic, although not expressly acknowledged by appellants, their argument against SDCERS's immunity claim would appear to apply only to the breach of fiduciary cause of action, not the conversion cause of action, as that cause of action is not based on a constitutional duty.

15

"Notwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to all of the following:

"(a) The retirement board of a public pension or retirement system shall have the sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system.  The retirement board shall also have sole and exclusive responsibility to administer the system in a manner that will assure prompt delivery of benefits and related services to the participants and their beneficiaries.  The assets of a public pension or retirement system are trust funds and shall be held for the exclusive purposes of providing benefits to participants in the pension or retirement system and their beneficiaries and defraying reasonable expenses of administering the system.

"(b) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system solely in the interest of, and for the exclusive purposes of providing benefits to, participants and their beneficiaries, minimizing employer contributions thereto, and defraying reasonable expenses of administering the system.  A retirement board's duty to its participants and their beneficiaries shall take precedence over any other duty.

"(c) The members of the retirement board of a public pension or retirement system shall discharge their duties with respect to the system with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with these matters would use in the conduct of an enterprise of a like character and with like aims." (Cal. Const., art. XVI, § 17.)[8]

In short, this provision establishes that members of a public pension board, such as

the SDCERS Board members, are fiduciaries; that they must exercise their fiduciary

---

[8]	The current version of article XVI, section 17 of the California Constitution was put in place as a result of Proposition 162 (The California Pension Protection Act of 1992) "to 'insulate the administration of retirement systems from oversight and control by legislative and executive authorities' . . . , and to protect retirement boards from ' " 'political meddling and intimidation.' " ' "  (*City of Oakland v. Oakland Police and Fire Retirement System* (2014) 224 Cal.App.4th 210, 226, fn. 8 (*City of Oakland*), citation omitted.)

16

duties with the purpose, among others, of providing benefits to participants and their beneficiaries; and that the board members' duty to pension plan participants and beneficiaries takes precedence over any other duty. However, as relevant to the following discussion, the plain language of the provision says *nothing* about creating liability for money damages against public pension plan members in instances when such liability would otherwise be barred by statutory governmental immunity.

Appellants rely on the doctrine of constitutional supremacy to argue that their breach of fiduciary cause of action is not subject to Government Claims Act immunity because it arises under the Constitution. Under that doctrine, "it is well established that '[a] statute cannot trump the Constitution.' " (*City of San Diego v. Shapiro* (2014) 228 Cal.App.4th 756, 788; see also *In re Marriage of Steiner and Hosseini* (2004) 117 Cal.App.4th 519, 527 ["The California Constitution trumps any conflicting provision of the Family Code."].) As stated in the case law upon which appellants rely, "It has long been acknowledged that our state Constitution is the highest expression of the will of the people acting in their sovereign capacity as to matters of state law. When the Constitution speaks plainly on a particular matter, it must be given effect as the paramount law of the state." (*Playboy Enterprises, Inc. v. Superior Court* (1984) 154 Cal.App.3d 14, 28.)

The doctrine of constitutional supremacy does not apply here because appellants have not identified any *conflict* between the constitutional provisions and the Government Claims Act immunity provisions. As we have explained, the constitutional provisions we have cited above merely establish that public pension board members have

17

certain fiduciary duties to participants and beneficiaries, but those provisions do not address whether beneficiaries and participants have the right to recover monetary damages from pension board members who breach those duties. Therefore, no constitutional provision is trumped when Government Claims Act immunity is applied to bar liability for monetary damages based on the SDCERS Board members' alleged breach of fiduciary duty.

There *are* instances—such as in suits for inverse condemnation—where the Constitution specifically provides for a monetary remedy against a public entity that trumps any Government Claims Act immunity that might otherwise apply. Indeed, the legislative committee comments to Government Code section 815, which sets forth the general rule of immunity for public entities, acknowledges that in some instances, such as inverse condemnation, constitutional provisions will trump Government Claims Act immunity.[9] "This section abolishes all common law or judicially declared forms of liability for public entities, *except for such liability as may be required by the state or federal constitution,* e.g., inverse condemnation. In the absence of a constitutional requirement, public entities may be held liable only if a statute (not including a charter provision, ordinance or regulation) is found declaring them to be liable." (Legis. Com. com.—Sen., 32 pt. 1 West's Ann. Gov. Code (2012 ed.) foll. § 815, p. 215, italics added.) Here, because the constitutional provisions at issue do not expressly create a monetary

_____

[9] Regarding inverse condemnation, the California Constitution provides in part: "Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner." (Cal. Const., art. I, § 19, subd. (a).)

remedy for breach of fiduciary duty against public pension board members, this is not a case where the Constitution *requires* liability and therefore trumps the Government Claims Act immunity provisions.

Appellants cite two cases that relied on the legislative committee comment to Government Code section 815 in analyzing whether a constitutionally-based cause of action was barred. Based on the legislative committee comment, *Young v. County of Marin* (1987) 195 Cal.App.3d 863 (*Young*) stated that "it is clear that although Government Code section 815 provides that public entities are not liable for injuries '[e]xcept as otherwise provided by statute,' they are not immune from constitutionally created claims." (*Id*. at p. 869.) *Young* concluded that the plaintiff could therefore state a cause of action against a public entity for wrongful termination based on the reasonable exercise of her First Amendment rights, regardless of the immunity for public entities stated in Government Code section 815. (*Young,* at p. 871.) Similarly, *Fenton v. Groveland Community Services Dist.* (1982) 135 Cal.App.3d 797 (*Fenton*) cited the legislative committee comment in stating that "the Legislature has recognized that the state Constitution may provide a cause of action independent from any statute providing for liability." (*Id*. at p. 804.) *Fenton* concluded that Government Code section 815 did not bar a cause of action based on the state constitution's right-to-vote provision. (*Fenton,* at p. 805.)

*Fenton* and *Young* are not dispositive of the issue presented here. Those cases concerned different constitutional provisions, and thus their conclusion as to whether *those* provisions, with the specific language at issue, *required* liability against a

19

public entity, does not resolve the issue of whether article XVI, section 17 of the California Constitution *requires* liability for any breach of fiduciary duty that it describes. As we have explained, article XVI, section 17 contains no suggestion that a cause of action for money damages is *required* to be available against public pension board members.

Turning to the language of article XVI, section 17 of the California Constitution, appellants contend that provision expressly excepts breach of fiduciary duty claims from Government Claims Act immunity, because it includes the phrase "notwithstanding any other provisions of law or the Constitution to the contrary." We reject this argument because it takes the phrase out of context. The full phrase provides that "[n]otwithstanding any other provisions of law or this Constitution to the contrary, the retirement board of a public pension or retirement system shall have plenary authority and fiduciary responsibility for investment of moneys and administration of the system, subject to all of the following . . . ." (Cal. Const., art. XVI, § 17.) Nothing in this phrase communicates an intent to create a constitutional monetary damages claim against public pension board members or to abrogate Government Claims Act immunity. Instead, the phrase is directed at the scope of a public pension board's authority to invest and manage pension system funds.

As further support for their argument that Government Claims Act immunity does not apply here, appellants briefly refer to a statement by our Supreme Court in *Lexin, supra,* 47 Cal.4th 1050. *Lexin* was an appeal in a criminal proceeding against several former members of the SDCERS Board, in which they were charged with violating state

20

conflict of interest statutes (Gov. Code, § 1090 et seq.).  (*Lexin,* at p. 1062.)  *Lexin* concluded that the criminal informations should be set aside as to most of the board members, but made a comment at the end of the opinion, in dicta, explaining that even though the board members could not be criminally prosecuted, other avenues existed to address the type of misconduct alleged.  "In closing, we note that, the applicability of [Government Code] section 1090 aside, a wealth of other legal remedies exists to ensure municipalities and retirement boards do not abuse the public trust.  Both groups are subject to actions for declaratory relief or mandamus challenging their decisions . . . , as the City and SDCERS Board were sued here.  Retirement board trustees are fiduciaries (Cal. Const., art. XVI, § 17) and as such are subject to suit for breach of fiduciary duty when their decisions fall short of the standard the law demands.  We express no opinion as to whether the Lexin defendants breached their fiduciary duties here, nor whether they might otherwise have been subject to civil liability for their actions."  (*Lexin,* at p. 1102, citations omitted.)  *Lexin* does not mention the issue of immunity, and there is no indication that our Supreme Court even considered the issue when stating that the SDCERS Board members were subject to suit.  Indeed, in stating that it was expressing no opinion on "whether the Lexin defendants . . . might otherwise have been subject to civil liability for their actions" (*ibid*.), our Supreme Court strongly implied that it had *not* considered whether immunity might apply to the specific conduct at issue.  Thus, *Lexin* does not advance appellants' argument that a constitutionally-based breach of fiduciary duty claim is not subject to Government Claims Act immunity.

21

Finally, we note that our decision is consistent with the only other published authority to consider the issue of whether Government Claims Act immunity applies to constitutionally-based breach of fiduciary claims against public pension plan members. In *Nasrawi v. Buck Consultants LLC* (2014) 231 Cal.App.4th 328, beneficiaries of a county employees' pension trust brought suit against the public pension association, alleging that the association breached its fiduciary duty to them by failing to file a lawsuit against actuaries whose negligence allegedly caused the pension trust to be underfunded. *Nasrawi* concluded that the breach of fiduciary duty claims were barred by Government Claims Act immunity (Gov. Code, §§ 815, 815.2, 820.2) because the association's board members exercised their discretion in deciding whether to file suit against the actuaries. (*Nasrawi,* at pp. 342-343.) As do Krolikowski and Van Putten here, the plaintiffs in *Nasrawi* argued that "because they allege a constitutionally based duty, [the court] should not consider the question of immunity," and contended that "the immunity question" was "answered by the mere fact that the Constitution is the source of the duties at issue." (*Id*. at p. 341.) *Nasrawi* rejected the argument, explaining that "[u]ndoubtedly, the board owes fiduciary duties under [California Constitution, article XVI,] section 17, but whether it is immune from alleged violations of those duties is a separate question." (*Nasrawi,* at p. 341.) Consistent with our conclusion here, *Nasrawi* explained that plaintiffs had not identified any authority that supported their contention that "public entity employees are liable for injuries caused by their *discretionary* acts or omissions that violate *constitutionally* imposed duties." (*Id*. at p. 342, italics added.)

22

In sum, we conclude that based on the Government Claims Act, SDCERS is immune from the tort-based causes of action for breach of fiduciary duty and conversion asserted by Krolikowski and Van Putten, despite the fact that the breach of fiduciary cause of action was based on duties set forth in the California Constitution. Accordingly, the trial court did not err in sustaining SDCERS's demurrer to those causes of action.

B.     *No Legal Doctrine Identified by Krolikowski and Van Putten Prevents SDCERS From Requiring Recoupment of the Overpayments*

We next turn to the several legal issues that the trial court resolved in the course of rejecting Krolikowski's and Van Putten's causes of action for writ of mandate and declaratory relief, both of which sought an order establishing that SDCERS was not legally authorized to take unilateral action to recoup the overpayments of pension benefits that it made to Krolikowski and Van Putten.

1.     *The Statute of Limitations for Causes of Action Based on Mistake Does Not Bar SDCERS From Requiring Recoupment of the Pension Overpayments*

Appellants' first argument is that the three-year statute of limitations applicable to causes of action based on mistake in Code of Civil Procedure section 338, subdivision (d) applies to SDCERS's recoupment of the overpayments from them and thus bars

23

recoupment.[10]  According to appellants, even though SDCERS sought recoupment through its own administrative process rather than by filing a lawsuit, it should be barred from seeking recoupment by the statute of limitations *as if* the recoupment were sought through a lawsuit.  The trial court rejected that contention, concluding that SDCERS's administrative process for seeking a recoupment was not controlled by the statute of limitations applicable to a lawsuit filed in court.  As we will explain, we agree with the trial court's analysis.

As a first step in their argument, appellants contend that SDCERS has no legal authority to recoup overpayments, in that the City has not expressly enacted a law stating that SDCERS may take action to seek recoupment.  Appellants argue that in the absence of any express authority, SDCERS is required to file a lawsuit, and that accordingly, we should apply the statute of limitations here *as if* a lawsuit had been filed by SDCERS.

In arguing that SDCERS was not authorized to seek recoupment through an administrative process rather than through a lawsuit, SDCERS relies on the statement in *City of San Diego v. San Diego City Employees' Retirement System* (2010) 186

---

10    Code of Civil Procedure section 338, subdivision (d) sets forth a three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake."  That provision further states that "[t]he cause of action in that case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."  (Code Civ. Proc., § 338, subd. (d).)  It is not clear from appellants' pleadings or briefing what they are contending the impact of the statute of limitation would be in this case, if we were to determine that it applies.  Specifically, it is not clear whether appellants are claiming that (1) the three-year statute of limitations period had already expired by the time SDCERS began the recoupment process, so that all recoupment is barred; or (2) that SDCERS may only reach back to recoup three years of overpayments from the time it discovered the error.  As we will conclude, neither contention would have merit, as the statute of limitations does not apply.

Cal.App.4th 69, 78 (*City of San Diego*) that "while SDCERS had exclusive authority to administer plan assets, it did not have plenary authority to evade the law." Appellants contend that SDCERS is evading the law by seeking recoupment through an administrative process rather than by filing a lawsuit because no express enactment by the City gives SDCERS recoupment authority. Appellants point out that with respect to certain other pension systems, the Legislature has given the plan sponsors the express authority to obtain recoupment within a certain time frame,[11] but the City did not do so in the portion of the San Diego Municipal Code governing the operations of SDCERS.

We reject the argument. Nothing in the City's laws establishing the scope of SDCERS's authority to administer the City's pension system *prevents* SDCERS from seeking recoupment of overpayments through an administrative process. Moreover, SDCERS generally has discretion to administer benefits to its members in a manner that it determines is in the best interest of the pension system and its members. "[P]ublic employee retirement system boards operate under a constitutional grant of plenary authority which grants to them 'sole and exclusive fiduciary responsibility over the assets of the public pension or retirement system.' (Cal. Const., art. XVI, § 17, subd. (a) (article XVI, section 17(a)).) . . . Similarly, the City's charter gives the board 'exclusive control of the administration and investment of such fund or funds as may be established.' (City

_____

[11] As appellants point out, the statutes governing CalPERS, California State Teachers' Retirement System, and certain county pension systems, give those entities the right to collect overpayments, limited to a three-year timeframe from the date of payment. (Gov. Code, §§ 20160, 20164, subd. (b)(1)); Ed. Code, §§ 22008, subd. (b), 24617; Gov. Code, §§ 31539, subd. (c), 31540, subd (b)(1).)

25

Charter, art. IX, § 144.)" (*City of San Diego, supra,* 186 Cal.App.4th at pp. 78-79.) The City's municipal code states that SDCERS "may modify benefits for service . . . and is the sole judge of the conditions under which persons may receive benefits from the system." (San Diego Mun. Code, § 24.0901.) As important here, although the City gives SDCERS wide authority to administer the pension system, SDCERS may not afford benefits that exceed the amounts authorized by the City in the City's ordinances governing pension benefits. "The granting of retirement benefits is a legislative action within the exclusive jurisdiction of the City. (City Charter, art. IX, § 141.) . . . [¶] It is not within SDCERS's authority to expand pension benefits beyond those afforded by the authorizing legislation. This is because the granting of retirement benefits is a power resting exclusively with the City. The scope of the board's power as to benefits is limited to administering the benefits set by the City." (*City of San Diego, supra,* 186 Cal.App.4th at pp. 79-80.) Because SDCERS is not authorized to have made the overpayments by paying out an amount of benefits *in excess of* the amounts authorized by the City, its action in recouping those overpayments is *consistent* with the scope of its authority as granted by the City, rather than *inconsistent* as appellants contend. Accordingly, SDCERS did not exceed the scope of the authority conferred upon it by the City by seeking recoupment of the overpayment through an administrative process rather than by filing a lawsuit.

Our decision is consistent with *City of Oakland, supra,* 224 Cal.App.4th 210, which considered the extent of a retirement system board's discretion in deciding whether

26

to recover overpayments it had made to its members.[12] Focusing on the general grants

of authority in the California constitution and the city's charter, *City of Oakland*

concluded that "[s]ince the Charter does not contain any express provisions regarding the

collection of improper payments from retirees, any such overpayments must be analyzed

under these general grants of Board authority."[13] (*Id.* at p. 244.) The court concluded

that "[g]iven this statutory backdrop—where the Board's decisionmaking must prioritize

the rights of retirees while making complex decisions impacting multiple variables—we

believe that the Board has discretion to decide whether, how and to what extent any

overpayments made to . . . retirees should be repayable." (*Ibid; see also Foster v.*

*Pension Board of City of Alameda* (1937) 23 Cal.App.2d 550, 555 [rejecting a writ of

mandate brought by pension member of a city pension system who was overpaid pension

benefits, and holding that the pension board could dock the member's future payments

recoup the overpayments].)

Case law establishes that when, as here, recoupment is obtained through an

*administrative process*, rather than through a lawsuit filed in court, the statute of

limitations does not apply. (*Little Co. of Mary Hosp. v. Belshe* (1997) 53 Cal.App.4th

325, 329; *Robert F. Kennedy Medical Center v. Department of Health Services* (1998) 61

---

[12]     *City of Oakland*'s discussion of the board's authority was set forth in the course of considering the argument that equitable estoppel did not bar recoupment of overpayments made to members in that recoupment would enlarge the statutory power of the board. (*City of Oakland, supra,* 224 Cal.App.4th at p. 243.)

[13]     Oakland's city charter contained similar general grants of authority to the retirement system as we have cited above with respect to the City and SDCERS.

27

Cal.App.4th 1357.) Both cases involved writs of mandate filed by hospitals challenging the California Department of Health Services's decision to recoup the overpayment of funds by the Medi-Cal program. Under Welfare and Institutions Code section 14177, the department may recoup such overpayments by offsetting future payments to the hospital rather than by filing a court action to recover the overpayments. (*Robert F. Kennedy Medical Center*, at p. 1361 [explaining offset procedure].) Both courts concluded that various three-year and four-year statutes of limitations set forth in the Code of Civil Procedure did not apply to bar the recoupment because " '[s]tatutes of limitations found in the Code of Civil Procedure . . . do not apply to administrative actions.' " (*Ibid*., quoting *Little Co. of Mary Hosp.*.)[14] Witkin summarizes the principle relied on in those cases, stating that "the general and special statutes of limitation referring to actions and special proceedings are applicable only to judicial proceedings; they do not apply to administrative proceedings." (3 Witkin, Cal. Procedure (5th ed. 2008) Actions, § 430, p. 547.) Here, because SDCERS did not file a lawsuit to recoup the overpayments, but

---

[14] Appellants rely on the recent decisions in *Yuba City Unified School District v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 648 and *Baxter v. State Teachers' Retirement System* (2017) 18 Cal.App.5th 340 (*Baxter*) to argue that "the statute of limitations applies to public pension systems, like SDCERS." We disagree, as *Yuba City* and *Baxter* are inapposite. *Yuba City* and *Baxter* both concerned challenges to the State Teacher's Retirement System's decision to recoup overpayments of pension benefits under Government Code section 22008, which permits such recoupment only for three years from "the discovery of the incorrect payment." (Ed. Code, § 22008, subd. (c).) Here, in contrast, no statutory authority applicable to SDCERS creates any time limitations on SDCERS's ability to recoup overpayments. As such, *Baxter* and *Yuba City* do not establish that a public pension system such as SDCERS is subject to any limitations period for recoupment in the absence of any specific statutory time limitation for recoupment.

28

instead pursued recoupment through its own internal administrative process, it is not subject to a statute of limitations period set forth in the Code of Civil Procedure.[15]

Appellants argue that case law discussing administrative processes of recoupment do not apply here because SDCERS did not provide an *adequate* administrative process to appellants, in that it "did not provide the appellants with a bona fide administrative hearing." According to appellants, the rules allowed their attorney to speak for only three minutes at the Business and Governance Committee and at the SDCERS Board hearings, and no hearing before an adjudicator was made available to them. In short, they contend that because they were not afforded "the type of administrative hearing contemplated

---

[15] Appellants rely on *County of Marin Assn. of Firefighters v. Marin County Employees Retirement Assn.* (1994) 30 Cal.App.4th 1638 to argue that the statute of limitations applies to an administrative process to recoup overpayments of pension benefits. However, that case arose in a different posture than this action, and not in the context of an administrative process to recoup overpayments, and thus is not persuasive. In *County of Marin* an employee association successfully filed a lawsuit to obtain a higher benefit payment retroactively by requiring the retirement association to include holiday pay in the pension benefit calculation. As part of the litigation, the retirement association contended that because it was required to retroactively pay higher pension benefits, it was entitled to recover contributions from the member *in arrears* to fund the higher benefits. *County of Marin* concluded that in the context of the lawsuit, the retirement association was barred by the statute of limitations from collecting contributions in arrears. The arrears issue was first raised by the retirement association in the context of litigation, and thus *County of Marin* did not address the issue presented here, namely whether *an administrative process* to recover overpayments is controlled by the statute of limitations. (See *City of Oakland v. Public Employees' Retirement System* (2002) 95 Cal.App.4th 29, 49 [explaining that *County of Marin* should not be misapplied to support the application of the statute of limitations to an administrative reclassification proceeding because "*County of Marin* was discussing a claim made in a civil action"].) Because *County of Marin* did not consider or discuss whether it was proper to apply the statute of limitations to an administrative recoupment process as opposed to a civil litigation proceeding, we find it to be inapposite to the issue presented here.

29

under [Code of Civil Procedure section] 1094.5," SDCERS "did not have an administrative process such that the 'administrative process exception' to the statute of limitations would apply." We reject the argument. Appellants have identified no case law stating that a certain type of administrative process must be provided to avoid the application of the statute of limitations set forth in the Code of Civil Procedure. The proper focus in not on the *nature* of the administrative process, but rather on the fact that SDCERS's recoupment decision was made through an internal agency procedure that did not involve SDCERS filing a recoupment lawsuit in court.[16] In the absence of any lawsuit, the statute of limitations set forth in Code of Civil Procedure section 338, subdivision (d) does not apply.

Further, even if the statute of limitations set forth in Code of Civil Procedure section 338, subdivision (d) applied here, the undisputed facts presented at trial and in connection with the summary judgment motions show that SDCERS took action against Krolikowski and Van Putten to recover the overpayments within the time period allowed by the statute of limitations.

Code of Civil Procedure section 338, subdivision (d) states that a cause of action "for relief on the ground of fraud or mistake" is "not deemed to have accrued until the discovery, by the aggrieved party . . . of the facts constituting the fraud or mistake."

---

[16]  We note that, as we have explained, SDCERS has an express written procedure for evaluating appeals of benefit determinations, and SDCERS followed its established process in both Krolikowski's and Van Putten's cases. SDCERS's procedures give it the discretion to refer the dispute to an adjudicator, but it did not elect to do so here, and neither Krolikowski nor Van Putten requested that SDCERS exercise its discretion to make a referral to an adjudicator.

30

(Code Civ. Proc., § 338, subd. (d).) "Although the statute does not expressly provide that the claim will accrue based upon either actual *or inquiry* notice of the claimant, California courts have long construed it in such a fashion." (*Baxter, supra,* 18 Cal.App.5th at p. 359.) As our Supreme Court has long held, under Code of Civil Procedure section 338, subdivision (d), a "plaintiff must affirmatively excuse his [or her] failure to discover the fraud within three years after it took place, by establishing facts showing that he [or she] was not negligent in failing to make the discovery sooner and that he [or she] had no actual or presumptive knowledge of facts sufficient to put him [or her] on inquiry." (*Hobart v. Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 (*Hobart*).) When inquiry notice applies, "if [a party] became aware of facts which would make a reasonably prudent person suspicious, [the party] had a duty to investigate further, and [is] charged with knowledge of matters which would have been revealed by such an investigation." (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 875.)

Here, no evidence in the record supports a finding that SDCERS became aware of facts that should have reasonably made it suspicious that appellants' pension benefits had been incorrectly calculated prior to the date that it conducted an audit and discovered the error. The undisputed evidence further shows that SDCERS took action within months of discovering the errors by notifying appellants that it would require recoupment. Therefore, SDCERS instituted the administrative process to recoup the overpayments to

31

appellants long before the expiration of the three-year statute of limitations in Code of Civil Procedure section 338, subdivision (d).[17]

Appellants contend that the statute of limitations should start running from the date that SDCERS made the mistaken calculations of the pension benefits because SDCERS always had *available* the information with which it could correctly determine the pension benefits, and SDCERS was therefore negligent in not discovering the errors more promptly. We reject this argument because it is based on a flawed understanding of the law governing delayed discovery of a cause of action for mistake or fraud under Code of Civil Procedure section 338, subdivision (d). As our Supreme Court has explained, "In many cases it has been said that means of knowledge are equivalent to knowledge. [Citations.] This is true, however, only where there is a duty to inquire, as where plaintiff is aware of facts which would make a reasonably prudent person suspicious. . . . [¶] It follows that plaintiff is not barred because the means of discovery were available at an earlier date *provided* he has shown that he was not put on inquiry by any circumstances known to him or his agents at any time prior to the commencement of the three-year period." (*Hobart, supra,* 26 Cal.2d at pp. 438-439.) " 'Where no duty is imposed by law upon a person to make inquiry, and where under the circumstances "a prudent man"

---

17     Appellants contend that the trial court's statement of decision improperly placed the burden on them to prove that SDCERS should have discovered its error sooner rather than placing the burden on SDCERS to show that it was not on inquiry notice more than three years prior to discovering the mistake. We reject appellants' argument because the portion of the statement of decision to which they refer concerns the trial court's analysis of the laches issue. "The party asserting laches bears the burden of production and proof on each element of the defense." (*Highland Springs Conference and Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 282.)

would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery. *The circumstances must be such that the inquiry becomes a duty, and the failure to make it a negligent omission.*' " (*Id*. at p. 438.) Thus, without some evidence that SDCERS was aware of facts that should have made it *suspicious* that appellants' pension benefits were erroneously calculated, the mere fact that SDCERS had all of the information available to conduct a correct calculation does not cause the limitations period to begin to accrue.

2. *The Exemption from Levy and Attachment for Benefits Under Public Retirement System Does Not Bar SDCERS from Recouping the Overpayments*

Under Code of Civil Procedure section 704.110, subdivision (b), with certain exceptions that are not relevant here, "[a]ll amounts held, controlled, or in process of distribution by a public entity derived from contributions by the public entity or by an officer or employee of the public entity for public retirement benefit purposes, and all rights and benefits accrued or accruing to any person under a public retirement system, are exempt" from all procedures for enforcement of a money judgment. Further, Code of Civil Procedure section 695.040 provides that "[p]roperty that is not subject to enforcement of a money judgment may not be levied upon or in any other manner applied to the satisfaction of a money judgment." Similarly, property exempt from enforcement of a money judgment is also exempt from prejudgment attachment. (Code Civ. Proc., § 487.020.) Based on these provisions, a pension benefit from a public entity such as

33

SDCERS may not be levied upon or made subject to attachment to satisfy a money judgment.

According to appellants, the provisions creating an exemption from levy and attachment for their pension benefits also prevents SDCERS from recouping its overpayment of pension benefits because the recoupment process is equivalent to a levy or attachment. The trial court rejected this theory in ruling on the summary judgment motions, explaining that "recouping the overpayment is not a levy or attachment as SDCERS is not executing on or enforcing a money judgment."

We agree with the trial court's reasoning. Appellants cite no authority that would support their position that the exemption against levy and attachment applies here. SDCERS does not have a money judgment against Krolikowski or Van Putten regarding the overpayment of pension benefits. Accordingly, in taking action to recoup those overpayments, SDCERS is not levying upon or attaching any funds to satisfy a money judgment, and SDCERS is therefore not barred from recoupment by the provisions in the Code of Civil Procedure preventing levy and attachment of benefits accrued under a public retirement system. (Cf. *Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 646-647 [in deducting amounts from the plaintiffs' pension benefits based on their outside income, the city was not undertaking an "execution" on their pension benefits, as a writ of execution is the process of "authorizing the seizure and appropriation of the property of a defendant for the satisfaction of a money judgment against him"].)

In the absence of any authority supporting their position, appellants make a policy argument. They contend that we would be ignoring "the policies embodied in the[]

34

Legislative enactments" prohibiting levy and attachment of public pension benefits if we were to allow SDCERS to recoup the overpayments. According to appellants, "SDCERS should have no greater rights than any other creditor." We are not persuaded. While the Legislature undoubtedly had sound policy reasons for exempting public pension benefits from levy and attachment *by a judgment creditor*, so as to "allow[ ] the debtor to retain all or part of it to protect himself and his family" despite a money judgment (*Kilker v. Stillman* (2015) 233 Cal.App.4th 320, 329), that is not the situation presented here. In this case it is the public retirement system *itself*, rather than a judgment creditor, that is seeking to recoup the overpayment of funds relating to appellants' pension benefits. Those overpayments are amounts that appellants should have not been paid as pension benefits in the first place. In short, the policies behind the exemption do not apply here because SDCERS is not a judgment creditor; it is the entity with the authority to ensure that appellants have been paid the correct amount of pension benefits and to take action to make corrections.

3. *The Trial Court Properly Concluded That the Doctrine of Equitable Estoppel Does Not Apply Here*

In its statement of decision, the trial court found that appellants did not meet their burden to establish that SDCERS was equitably estopped to recoup the overpayments. Appellants challenge the trial court's decision.

"The doctrine of equitable estoppel is founded on notions of equity and fair dealing and provides that a person may not deny the existence of a state of facts if that person has intentionally led others to believe a particular circumstance to be true and to

35

rely upon such belief to their detriment. . . . ' "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel:  (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury." '  . . .  Where, as here, a party seeks to invoke the doctrine of equitable estoppel against a governmental entity, an additional element applies.  That is, the government may not be bound by an equitable estoppel in the same manner as a private party unless, 'in the considered view of a court of equity, the injustice which would result from a failure to uphold an estoppel is of sufficient dimension to justify any effect upon public interest or policy which would result from the raising of an estoppel.' " (*City of Oakland, supra,* 224 Cal.App.4th at pp. 239-240, citations omitted.)  Further, the doctrine of equitable estoppel has been applied in cases involving a retirement system's right to recoup the overpayment of pension benefits.  (See, e.g., *id*. at pp. 239-248.)[18]

Here, appellants contend that the doctrine of equitable estoppel prevents SDCERS from denying that appellants were entitled to the full amount of the pension benefits that were paid to them.  The trial court found against appellants based on their failure to establish two of the four required elements of equitable estoppel.  Specifically, the trial

[18]    Based on the specific facts before it, *City of Oakland* concluded that the retirement system was estopped from recouping one type of overpayment (based on shift differential pay treatment) but not estopped from recouping another type of overpayment (based on a temporary reduction in the number of designated holidays).  (*City of Oakland*, *supra*, 224 Cal.App.4th at pp. 239-248.)

court explained that based on the evidence presented at trial, appellants did not meet their burden to establish (1) that SDCERS was "apprised of the facts" prior to 2013 when it conducted the audits of appellants pension benefits; and (2) that appellants sustained an injury in reliance on SDCERS's failure to earlier inform them of the error in the calculation of their pension payments.

"The existence of an estoppel is generally a factual question. [Citation] Therefore, we review the trial court's ruling in the light most favorable to the judgment and determine whether it is supported by substantial evidence." (*Feduniak v. California Coastal Com.* (2007) 148 Cal.App.4th 1346, 1360.)[19]

We first consider whether substantial evidence supports the trial court's finding that appellants did not establish the first element of equitable estoppel, namely that SDCERS was "apprised of the fact[]" that it had been paying appellants more pension benefits than they were entitled to receive. (*City of Oakland, supra,* 224 Cal.App.4th at p. 239.)

For the purposes of the first element of equitable estoppel, the party to be estopped need not have actual knowledge of the true facts. Instead, it may be shown that the party

---

[19]    "[W]here estoppel is sought against the government, 'the weighing of policy concerns' is, in part, a question of law. . . 'Whether the injustice [that] would result from a failure to uphold an estoppel is of sufficient dimension to justify the effect of the estoppel on the public interest must be decided by considering the matter from the point of view of a court of equity' " (*Feduniak v. California Coastal Com., supra,* 148 Cal.App.4th at p. 1360, citations omitted.)  However, because the trial court did not find against appellants on this ground, we do not reach the issue, and accordingly we have no occasion to apply a de novo standard of review on that question of law.

" 'although ignorant or mistaken as to the real facts, was in such a position that he *ought* to have known them, so that knowledge will be imputed to him. In such a case, ignorance or mistake will not prevent an estoppel.' " (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 491, fn. 28.)[20] Thus, the factual question for the trial court was whether, even though SDCERS did not know that it was making overpayments to appellants, it was in such a position that it *ought to* have known.

Here, the evidence presented at trial supported a finding that prior to the audits conducted in 2013, SDCERS was not in a position that it *ought to* have known that it was making overpayments to appellants. There was no evidence presented at trial that anything occurred prior to the audits to raise SDCERS's suspicions that there had been an error in the original calculations or that the error was so obvious on its face that SDCERS should have discovered it earlier. At trial, SDCERS's chief benefits officer testified that SDCERS first discovered the errors during the 2013 audits, and no contrary evidence was presented. Accordingly, substantial evidence supports the trial court's finding that

---

[20] Citing *Green v. MacAdam* (1959) 175 Cal.App.2d 481, 487, appellants contend that " 'negligence satisfies the element of knowledge.' " They argue that because the miscalculation of the pension benefits was necessarily based on negligence by SDCERS, and because SDCERS had all the necessary information to discover the error sooner had it attempted to do so, we should conclude that SDCERS was apprised of the fact that the benefits were incorrectly calculated. We are not persuaded. *Green's* statement that " 'negligence satisfies the elements of knowledge' " is too simplistic. As we have stated, the proper inquiry, as stated by our Supreme Court is whether a party is "in such a position that he ought to have known" that a mistake was made, not simply whether the party was originally negligent in making the mistake. (*City of Long Beach v. Mansell, supra,* 3 Cal.3d at p. 491, fn. 28.)

SDCERS was not apprised of the fact that it had been making overpayments to appellants.

Appellants cite *Crumpler v. Board of Administration* (1973) 32 Cal.App.3d 567 (*Crumpler*) and *Driscoll v. City of Los Angeles* (1967) 67 Cal.2d 297 (*Driscoll*) to support their claim that the trial court erred in denying their estoppel claim. However, as we will explain, neither case requires a different result here.

In *Crumpler* the city misclassified animal control officers as safety officers, which impacted their pension benefits when the error was discovered. (*Crumpler*, *supra*, 32 Cal.App.3d at pp. 570-573.) *Crumpler* concluded that the city would be estopped from seeking retroactive reclassification of the employees because "[t]he city was apprised of the facts" in that it "knew that petitioners were being employed by the police department as animal control officers at the time it erroneously advised them they would be entitled to retirement benefits as local safety members." (*Id*. at p. 582.) Here, in contrast, SDCERS did not have any basis for knowing that it had miscalculated appellants' pension benefits until years later when it conducted the audits because the miscalculation was not based on an obvious and known fact such as that the employees in *Crumpler* were being employed as animal control officers.

In *Driscoll,* the city erroneously advised widows that they were not entitled to pension benefits, causing them to delay in filing a claim. (*Driscoll*, *supra*, 67 Cal.2d at pp. 300-305.) *Driscoll* concluded that the city was estopped from relying on the three-year statute of limitation to deny the widows' claims to future benefit payments. (*Id*. at p. 310.) In doing so, it relied on a particular rule governing the circumstances in which a

39

public entity may rely on the statute of limitations to deny a claim when public entity's erroneous advice caused the delay. As *Driscoll* explained, "a city or other public agency is not estopped from asserting the statute of limitations if under all the circumstances 'the nature of the conduct or advice of the city is reasonable when given.' " (*Id.* at p. 306.) When "the inaccurate advice or information is negligently ascertained or given, the city's conduct may then be deemed to be unreasonable" and estoppel will arise. (*Id.* at p. 307.) Although *Driscoll* discusses the concept of negligence while considering the issue of equitable estoppel, that discussion is clearly in the specific context of a statute of limitations claim made by a public entity. Here, the issue is not whether SDCERS is estopped to rely on the statute of limitations to bar a party from seeking relief, and *Driscoll* is accordingly inapposite.

In sum, we conclude that substantial evidence supports the trial court's finding that SDCERS was not apprised of the facts as required for the first element of equitable

estoppel, and appellants cite no persuasive authority to convince us to the contrary.[21] As we conclude that the trial court properly denied the equitable estoppel claim based on its finding on the first element, we need not and do not consider the trial court's second basis for rejecting equitable estoppel, namely that the fourth element of equitable estoppel was not established because appellants did not sustain an injury based on SDCERS's incorrect representation as to the amount of monthly pension benefits that they would receive.[22]

---

[21] We afforded the parties the opportunity to provide supplemental briefing to address an argument concerning the equitable estoppel cause of action that SDCERS extensively discussed it in its trial brief but that it did not identify in its respondent's brief as a ground for affirming the judgment. Specifically, SDCERS argued in the trial court that, as a matter of law, an order equitably estopping SDCERS from recouping the overpayments is not available because such an order would require it to take an action contrary to what is required of it under law. (See, e.g., *Medina v. Board of Retirement, Los Angeles County Employees Retirement Assn.* (2003) 112 Cal.App.4th 864, 870 [estoppel could not be applied to retirement board to require members to be classified as safety members when they did not meet the applicable statutory definition]; *City of Pleasanton v. Board of Administration* (2012) 211 Cal.App.4th 522, 542 [estoppel could not be applied to require the treatment of standby pay as pensionable compensation when the applicable statute precluded such treatment].) SDCERS indicated in response to our request for supplemental briefing that to the extent the issue is whether SDCERS is equitably estopped to recoup the overpayments, it does not continue to assert that equitable estoppel is unavailable to appellants as a matter of law.

[22] Because we do not discuss the trial court's finding that appellants did not sustain an injury, we need not consider and resolve the parties' dispute as to whether appellants have been injured in that they may not be able to recover from the Internal Revenue Service (IRS) or the State of California the income taxes that they paid on the pension benefits that they now have to repay to SDCERS.

4.      *The Trial Court Properly Concluded That the Doctrine of Laches Does Not Apply Here*

We next consider appellants' challenge to the trial court's conclusion in its statement of decision that SDCERS is not barred by the doctrine of laches from recouping the overpayments made to Krolikowski and Van Putten.

"Laches is based on the principle that those who neglect their rights may be barred, in equity, from obtaining relief. . . .  The elements required to support a defense of laches include unreasonable delay and either acquiescence in the matter at issue or prejudice to the defendant resulting from the delay. . . .  Generally, laches is a question of fact, but where the relevant facts are undisputed, it may be decided as a matter of law." (*City of Oakland, supra,* 224 Cal.App.4th at p. 248, citations omitted; see also *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 67 ["Generally, a trial court's laches ruling will be sustained on appeal if there is substantial evidence to support the ruling."].)  "Under appropriate circumstances, the defense of laches may operate as a bar to a claim by a public administrative agency. . . if the requirements of unreasonable delay and resulting prejudice are met." (*Robert F. Kennedy Medical Center v. Belshe* (1996) 13 Cal.4th 748, 760, fn. 9.)  " '[L]aches is not available where it would nullify an important policy adopted for the benefit of the public.' "  (*City of Oakland,* at p. 248.)

" 'In cases in which no statute of limitations directly applies but there is a statute of limitations governing an analogous action at law, the period may be borrowed as a measure of the outer limit or reasonable delay in determining laches. . . .'  The effect of the violation of the analogous statute of limitations is to shift the burden of proof to the

42

plaintiff to establish that the delay was excusable and the defendant was not prejudiced thereby." (*Lam v. Bureau of Security & Investigative Services* (1995) 34 Cal.App.4th 29, 37.)

Here, appellants argue that the analogous statute of limitations is the three-year limitations period for causes of action based on mistake set forth in Code of Civil Procedure section 338, subdivision (d). According to appellants, SDCERS failed to seek recoupment within the three-year limitations period, so that the burden of proof was shifted to SDCERS to establish that its delay in seeking recoupment was excusable and that appellants were not prejudiced. Appellants contend that the trial court therefore erroneously placed the burden on them to prove unreasonable delay and prejudice.

In section II.B.1, *ante*, we discussed and rejected appellants' contention that SDCERS failed to seek recoupment within the three-year statute of limitations period contained in Code of Civil Procedure section 338, subdivision (d). We incorporate that discussion here, and on that basis, we conclude that appellants did not succeed in shifting the burden to SDCERS on the laches claim. Therefore, it remained appellants' burden to establish unreasonably delay and prejudice resulting from the delay.

The trial court found that appellants did not establish SDCERS engaged in unreasonable delay in taking action to recoup the overpayment of pension benefits. That

finding is supported by substantial evidence.[23] Specifically, as we have previously explained, SDCERS did not know of the error in calculating appellants' pension benefits until it conducted the audits in 2013. Promptly upon learning of the mistakes, SDCERS notified appellants and began the administrative process to recoup the overpayments. Further, no evidence was presented at trial to suggest that SDCERS had any suspicion that there may have been a problem with the calculation of appellants' pension benefits, and thus it had no reason to conduct an audit prior to 2013.[24] Under those circumstances, the evidence amply supported the trial court's finding that SDCERS did not engage in any unreasonable delay.[25]

---

[23]    The trial court also found that appellants did not establish prejudice resulting from the delay. Because we conclude that the trial court's finding regarding the first element of laches is supported by substantial evidence, we need not and do not consider the trial court's finding regarding lack of prejudice.

[24]    In their reply brief, appellants contend that a 1992 legal memorandum written by the city attorney to a SDCERS administrator shows that SDCERS engaged in unreasonable delay in discovering the overpayments to appellants and acting to recoup them. We disagree. Based on the controlling law at the time, the 1992 memorandum offers an opinion on the steps that SDCERS could take to recoup an overpayment of pension benefits. It does not discuss any specific problems with calculating benefits that might have led to any overpayments to SDCERS members, and it certainly does not discuss whether the pension benefit calculations were correct as to Van Putten and Krolikowski, as they did not retire until 2000 and 2006 respectively, which is long after the 1992 memorandum was written. Accordingly, the 1992 memorandum does not provide evidence of unreasonable delay.

[25]    Although we have concluded that substantial evidence supports the trial court's decision that the doctrines of laches and equitable estoppel do not apply because SDCERS promptly took action once it learned of its errors, we are nevertheless sympathetic to appellants' situation as they did not find out until many years after the fact that SDCERS made mistakes in calculating their pension benefits, by which time the overpayments and associated interest amounted to a substantial sum.

C.   *The Trial Court Did Not Abuse Its Discretion in Making the Evidentiary Rulings Challenged by Appellants*

Appellants challenge two evidentiary rulings made by the trial court during trial. We review the trial court's evidentiary rulings by applying an abuse of discretion standard. (*People v. Alvarez* (1996) 14 Cal.4th 155, 203 ["appellate court reviews any ruling by a trial court as to the admissibility of evidence for abuse of discretion"]; (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 [a ruling excluding or admitting expert testimony is reviewed for abuse of discretion].) "A ruling that constitutes an abuse of discretion has been described as one that is 'so irrational or arbitrary that no reasonable person could agree with it' " but the trial court must exercise its discretion "within the confines of the applicable legal principles." (*Id* at p. 773.)

1.   *The Trial Court Did Not Abuse Its Discretion in Excluding Conny Jamison's Opinion That SDCERS Acted Unreasonably*

At the beginning of the bench trial, the trial court considered appellants' request that they be able to introduce the testimony of Conny Jamison, who was a SDCERS Board member and the City's treasurer until 2001. Appellants explained that Jamison would testify regarding her opinion that it was unreasonable for SDCERS "to wait so long before double-checking to see that the pension calculations are correct." The proposed testimony was expected to track Jamison's declaration submitted in connection with the summary judgment motions, in which she stated, "Based on my experience and training as a public pension trustee, it would be unreasonable and imprudent not to ensure

45

that staff accurately calculated a beneficiary's pension, and then failed to audit or double check those calculations promptly."

The trial court ruled that it would exclude Jamison's testimony. As an initial matter, the trial court noted that because Jamison was not a percipient witness to the calculation of appellants' pension benefits, she would be testifying as an expert witness. The trial court stated that it would not admit Jamison's expert testimony for two independent reasons. First, Jamison had not been designated as an expert witness. Second, the trial court stated that as the trier of fact, "I don't think I need the assistance of an expert to tell me what is reasonable and what's not reasonable in this area."

Appellants contend that the trial court erred in making the ruling for two reasons. First, addressing the trial court's first basis for the ruling, appellants contend that by submitting Jamison's declaration in connection with the summary judgment motions, they "substantially complied" with the requirement that Jamison be designated as an expert witness at trial as required by Code of Civil Procedure section 2034.260. Next, addressing the second basis for the trial court's ruling, appellants point out that Evidence Code section 805 states that "[t]estimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact."

We conclude that the first ground set forth by the trial court was a sufficient ground for excluding Jamison's testimony, and we accordingly need not, and do not, reach the second ground.

It is undisputed that Jamison was not designated as an expert witness. Appellants both filed expert witness designations, which stated they do "not designate any expert witnesses at this time," and neither of them attempted to file a supplemental designation. Code of Civil Procedure section 2034.300 states that "the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following," including "(a) List that witness as an expert under Section 2034.260" and "(b) Submit an expert witness declaration." Here, even though appellants could plausibly argue that they substantially complied with the requirement that they "[s]ubmit an expert witness declaration" (Code Civ. Proc., § 2034.300, subd. (b)) by submitting Jamison's declaration in connection with the summary judgment motions, they clearly did *not* comply with the additional requirement that they "[l]ist that witness as an expert under Section 2034.260." (Code Civ. Proc., § 2034.300, subd. (a).) Accordingly, the trial court was well within its discretion to exclude Jamison's expert testimony because she was not properly designated as an expert witness.

2. *The Trial Court Did Not Abuse Its Discretion by Admitting Testimony from SDCERS's CEO About the IRS Rules That SDCERS Follows*

During trial, the trial court overruled appellants' objections to certain testimony by SDCERS's CEO Mark Hovey about the IRS regulations that apply to SDCERS as a tax qualified plan. Appellants contend that the trial court should have sustained their objections to that testimony as it constituted expert testimony on subjects that Hovey was

47

not qualified to opine upon because he is not an attorney.[26]  In their appellate brief, appellants summarize Hovey's relevant testimony as follows:

> "• an opinion regarding whether the Internal Revenue Service has regulations that recite what a tax qualified plan such as [SDCERS] can do or should do in the event of a plan failure or error . . . ;
>
> "• an opinion that tax law gives SDCERS no flexibility as to whether or not to collect overpayments . . . ;
>
> "• an opinion regarding whether the San Diego Municipal Code requires SDCERS to follow IRS regulations . . . ; [¶] and
>
> "• an opinion regarding the ramifications from the IRS if SDCERS did not collect in full from Krolikowski and Van Putten."

In admitting the testimony, the trial court overruled appellants' continuing objection that the questions "call[ed] for a tax opinion . . . from a lay witness who has no legal training."  The trial court explained it was overruling the objection because Hovey was SDCERS's CEO and "is the one that implements" the IRS regulations at SDCERS. Appellants contend the trial court abused its discretion in admitting the evidence.

As an initial matter, we note that appellants' argument depends on the premise that Hovey's testimony constituted *opinion* rather than percipient witness testimony.  We note that it appears from the trial court's comments that it overruled appellants' objection, at least in part, because it concluded that Hovey was *not* offering opinion testimony. Instead, the trial court appears to have concluded that Hovey was testifying about his own personal experience as CEO of SDCERS, including about SDCERS's policies and its implementation of the applicable IRS regulations.

---

26    We note that although Hovey is not a lawyer, he is a certified public accountant.

48

However, even if Hovey's testimony could be characterized as lay opinion testimony, "[a] trial court has broad discretion to admit lay opinion testimony, especially where adequate cross-examination has been allowed." (*In re Automobile Antitrust Cases I and II* (2016) 1 Cal.App.5th 127, 145.) Under Evidence Code section 800, "[i]f a witness is not testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is permitted by law, including but not limited to an opinion that is: (a) Rationally based on the perception of the witness; and (b) Helpful to a clear understanding of his testimony." Here, the trial court reasonably could conclude that because Hovey was SDCERS's CEO and was the person who implemented the IRS regulations at SDCERS, his testimony about the IRS regulations that applied to SDCERS was a matter within his own perception and was useful to an understanding of his testimony about SDCERS's practices and procedures, despite the fact that Hovey was not a lawyer. Accordingly, it was within the trial court's discretion to admit Hovey's testimony as lay opinion testimony.

Based on the above, we conclude that the trial court did not abuse its discretion in overruling appellants' objections to Hovey's testimony.

## DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

AARON, J.

50

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| VINCENT KROLIKOWSKI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO CITY EMPLOYEES'<br>RETIREMENT SYSTEM,<br><br>    Defendant and Respondent. | D071119<br><br><br><br>(Super. Ct. No. 37-2015-00006255-<br>CU-OE-CTL) |
| CONNIE VAN PUTTEN,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SAN DIEGO CITY EMPLOYEES'<br>RETIREMENT SYSTEM,<br><br>    Defendant and Respondent. | <br><br><br><br>(Super. Ct. No. 37-2015-00021007-<br>CU-OE-CTL)<br><br>ORDER CERTIFYING OPINION<br>FOR PUBLICATION |

THE COURT:

The opinion in this case filed May 23, 2018, was not certified for publication.  It appearing the opinion meets the standards specified in California Rules of Court, rule 8.1105(c), the requests made pursuant to California Rules of Court, rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein to be published in the Official Reports.


BENKE, Acting P. J.

Copies to:  All parties

2